UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

AMANI BOOKER,

          Petitioner,

          v.                                      Case No. 12-C-1015

UNITED STATES OF AMERICA,

          Respondent.

---

ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE, DENYING CERTIFICATE OF APPEALABILITY
AND DISMISSING CASE

Amani Booker has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 challenging his 2011 judgment of conviction. For the reasons set forth below, the motion will be denied.

A July 13, 2010, indictment charged Booker with one count of conspiracy to sex traffic a child in violation of 18 U.S.C. § 371, one count of sex trafficking a child in violation of 18 U.S.C. § 1591, and one count of production of child pornography in violation of 18 U.S.C. § 2251(a), which carried a mandatory penalty of 15 years. (Case No. 10-CR-133, Doc. 15.) After receiving Booker's guilty plea to count two (sex trafficking a child), this court sentenced Booker to 168 months and the government dismissed the other two counts with leave of the court. (Case No. 10-CR-133, Docs. 35, 38, 64 and 66.) The Seventh Circuit Court of Appeals affirmed Booker's conviction on November 16, 2011. *United States v. Booker*, 447 Fed. Appx. 726 (7th Cir. 2011). Booker's initial 2255 motion followed on October 5, 2012. (Doc. 1.)

Because many of Booker's assertions are contradicted by the record, the court will first address the procedural history of the underlying criminal action. Attorney Thomas G. Wilmouth entered his notice of appearance on behalf of Booker on June 18, 2010. (Case No. 10-CR-133, Doc. 4.) A plea agreement was docketed on September 14, 2010, in which Booker said he would plead guilty to count two (sex trafficking of a child) and acknowledged the charge carried a minimum term of imprisonment of ten years. (Case No. 10-CR-133, Doc. 35.) Notably, at paragraph 16 of the document, the parties agreed that the applicable base offense level charged in count two was 30 under U.S.S.G. § 2G1.3(a)(2). Further, the parties understood and agreed that the government would recommend a two-level increase for the use of a computer under § 2G1.3(b)(3) of the Sentencing Guidelines and that a two-level increase for the "commission of a sex act" under § 2G1.3(b)(4) was applicable. Booker agreed that he did not object to those enhancements. (*Id*., ¶ 17.) Finally, at paragraph 38 Booker acknowledged, understood, and agreed that he would plead guilty because he was in fact guilty and added that no other promises, representations or other inducements had been made, nor agreements reached other than those set forth in the plea document, to induce him to plead guilty.

Attorney Tom Wilmouth represented Booker during the plea hearing, but Attorney Mullins entered a notice of appearance later that day. (Case No. 10-CR-133, Doc. 42.) On December 27, 2010, Attorney Mullins filed a motion for an extension of time to file objections to the presentence report to allow him to opportunity to consult with Booker in prison. (Case No. 10-CR-133, Doc. 45.) Attorney Mullins also filed psychiatric and expert reports. (Case No. 10-CR-133, Docs. 50 and 51.) Later, this court sustained Attorney Mullins's objection to a two-level increase under U.S.S.G. § 3B1.1, but denied his request

for a sentence of 120 months. Attorney Mullins argued that the child-victim had been prostituting herself before meeting Booker and that the victim looked older that she was, citing a pediatrician's report that a layperson could not tell whether the child was under 18 years of age.

The court rejected Booker's request for a 120-month sentence with the following comments:

> I have weighed the facts and circumstances of this case and have noted that the child who was enticed to engage in prostitution here was 14 years old. While the doctor who submitted his report suggests that it might be difficult to tell from looking at her whether she was 14 or older, what you and Miss Arnold said and did suggests strongly that you didn't think she was 18. In fact, in my view you knew she was not 18. You quizzed this child about her age. Miss Arnold did also.
>
> Miss Arnold noted how inappropriately she was dressed when you and Miss Arnold approached this child on the street at about 1:30 in the morning as she was clearly soliciting business on the street corner. You and Miss Arnold schooled this child and made it clear to her that what she was selling for $50 could be sold for a lot more. You humiliated this young woman and exposed her to the world by taking photographs of her and posting them on the Internet so the world can see. Her privacy was at that point shot, eliminated, perhaps for all time.
>
> . . . .
>
> Mr. Wall has requested that the court impose a 168-month sentence. And when I take into account all of the facts that have been set out in this record, I concur. Such a sentence is no greater than is necessary under the circumstances. It's reasonable, yet exacts the right amount of punishment with due regard for your incarceration prior to this case, in this particular case, as well as other sentences that have been imposed.

(Doc. 8-2 at 27-28.)

The Seventh Circuit Court of Appeals decision indicates that Booker was represented by Brian Mullins on appeal. *Booker*, 447 Fed. Appx. 726. Indeed, the briefs were prepared and signed by Attorney Mullins who argued that the district court made

3

procedural errors by not adequately considering his two arguments for a below-guidelines sentence and by referring to a matter that was not in the record. (Appeal No. 11-1241, Docs. 7, 8, 15, and 17.) Because Attorney Mullins was not available for oral argument, Attorney Brian Fahl entered a notice of appearance form. (Appeal No. 11-1241, Doc. 16, 18.) Following the November 8, 2011, oral argument, the Seventh Circuit issued its decision on November 16, 2011, affirming the conviction. (Appeal No. 11-1241, Doc. 34.) The mandate issued on December 8, 2011. (Appeal No. 11-1241, Doc. 36.)

In affirming, the Seventh Circuit noted that the district court recognized that the victim was already a sex worker but determined that a below-guidelines sentence was not warranted because Booker taught her how to prostitute herself more profitably and posted nude photos on the internet. In addition, the district court had explained that Booker questioned the victim about her age repeatedly thereby indicating that he did not believe her claim that she was eighteen. With respect to the district court's statement about the victim's attire, the Seventh Circuit determined that the district court's finding that Booker knew the victim was not 18 had ample support in the record. Booker avoided demanding valid identification, knew that the victim could not carry on an adult conversation, and the police knew she was a minor. *Booker*, 447 Fed. Appx. 726.

In the pending motion, Booker asserts two grounds for relief. First, he claims that counsel was ineffective on various grounds. Allegedly, counsel failed to argue against a U.S.S.G. § 2G1.3(b)(3)(enhancement for use of a computer). Additionally, Booker took issue with his representation by multiple attorneys—one or more of whom failed to fully investigate the case before advising him to plead and refused his calls. Second, Booker asserted that the district court erred by increasing his Guidelines range for use of a

4

computer in the crime. This second claim was dismissed upon the initial screening of the petition because Booker failed to raise the issue on direct appeal; however, the court ordered the parties to brief the second claim and noted that Booker could challenge counsel's failure to object to the enhancement. (Doc. 2.)

Booker's brief in support of the motion framed the issues as follows: (1) counsel violated his due process and Sixth Amendment rights when he failed to investigate, object to, or otherwise challenge the court's application of U.S.S.G. § 2G1.3(b)(3); and (2) counsel provided ineffective assistance during the plea negotiations by giving him incorrect advice regarding the charge and sentencing range as well as by preventing him from filing a motion to withdraw his plea after he was aware of counsel's erroneous advice.

Both claims arise under the Sixth Amendment, where relief is available only in extraordinary situations such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred resulting in a complete miscarriage of justice. *Blake v. United States*, 723 F.3d 870, 878-879 (7th Cir. 2013), citing *Prewitt v. United States*, 83 F.3d 812, 816 (th Cir. 1996). A party asserting ineffective assistance of counsel under the Sixth Amendment bears the burden of establishing two elements: (1) counsel's performance fell below objective standards for reasonably effective representation; and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first element of the *Strickland* test, the court considers whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Wyatt v. United States*, 574 F.3d 455, 457-458 (7th Cir. 2009). The court's assessment is highly deferential with a strong presumption that

5

counsel's conduct falls with the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2051. To that end, courts are admonished not to become "Monday morning quarterbacks" in evaluating counsel's performance. *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). As for prejudice, Booker must show that there is a reasonable probability, that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome. *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).

Booker contends that Attorney Wilmouth "was vehement in arguing that § 2G1.3(b)(3) was applicable" and that he felt "overwhelmed by counsel's arguments and succumbed to the pressure from him to accept the government's plea offer." He also maintains that Attorney Mullins disregarded his concerns about § 2G1.3(b)(3), refused to challenge the court's application of the enhancement, counseled against withdrawing the plea, and told him that a jury would find him guilty by "strict liability." Finally, Booker contends that he never had the opportunity to discuss this issue—or any issue—with Attorney Fahl on appeal. Booker maintains that he informed counsel that he never posted ads to the internet, that the computer on which the pictures were found and the credit card information used to place the ads was in Holly Arnold's name, that Holly Arnold admitted the computer was hers, and that he never entered the hotel room.

The § 2G1.3(b)(3) enhancement for use of a computer increases the offense level by two levels [i]f the offense involved the use of a computer or an interactive computer service to . . . entice encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor. The commentary provides that "[s]ubsection (b)(3) is intended to

6

apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor. *Id.* cmt. 4. Booker relies on a Seventh Circuit decision in which the court found the enhancement inapplicable based on application note 4's language, where internet ads for the defendant's minor prostitute were posted by another minor who was working for a different pimp. *United States v. Patterson*, 576 F.3d 431, 434, 443 (7th Cir. 2009). However, the Seventh Circuit rejected the argument that Booker makes regarding the application for § 2G1.3(b)(3)(B) in *United States v. McMillian,* 777 F.3d 444, 449-450 (7th Cir. 2015) . There, the Seventh Circuit affirmed this court's guideline for enhancement where the defendant used a computer to create Craigslist posts. The Seventh Circuit reasoned:

> [T]he note is wrong. The guideline section provides a 2-level enhancement whenever the defendant uses a computer to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor," which the defendant did when he created Craigslist pages on which to advertise Jessica's and the girls' services as prostitutes. When an application note clashes with the guideline, the guideline prevails. *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 123 L. Ed. 2d 598 (1993).
>
> It's true that *United States v. Patterson*, 576 F.3d 431, 443 (7th Cir. 2009), applied the application note, despite its inconsistency with the guideline, without attempting to distinguish, or even citing, *Stinson*. But *Patterson* is distinguishable from the present case, because the government there had conceded, albeit erroneously, that the application note controlled; we had no reason to reject a party's concession regarding an issue raised by its opponent.
>
> Moreover, any doubt about the applicability of *Stinson* to the computer-use guideline is dispelled by the lengthy analysis of the issue in *United States v. Pringler*, 765 F.3d 445, 451–55 (5th Cir.2014). And as pointed in that opinion, "the [computer-use] enhancement would not have been applicable [in *Patterson* ], irrespective of application note 4," because "neither the defendant nor someone part of the same criminal activity used

7

a computer to solicit patrons," *id.* at 454 n. 4, as was done in both *Pringler* and our case today. Essentially, then, the statement in *Patterson* about the application note is dictum.

*Id.,* 777 F.3d at 449-450.

More importantly, Booker appeared in this court—under oath—and contradicted the statement he makes in his motion. At the beginning of the plea hearing, this court explained to Booker the consequences of making false statements under oath, Booker's right to speak privately with his attorney, and his right to change his mind regarding the guilty plea before the conclusion of the day's proceedings. The court told Booker that if he changed his mind the court would respect his decision and set the case for trial on the court's calendar. Booker unequivocally stated that he wanted to plead guilty. (Case No. 10-CR-133, Doc. 101 at 3-4.)

At page 6 of the plea hearing transcript, the court asked Booker how he was getting along with his attorney. According to Booker, the two of them spoke freely about the case and that there were no matters that Attorney Wilmouth "refused to discuss or pursue." (Case No. 10-CR-133, Doc. 101 at 6.) Booker stated that he felt that he had effective legal help up to that point. (*Id.*) The court found Booker competent to proceed.

Next, Attorney Wilmouth discussed count 2—sex trafficking of a minor—charge and their disagreement with the government as to whether it was a strict liability charge. Attorney Wilmouth explained that Booker agreed, that at the very least, he recklessly disregarded the fact that the victim had not reached the age of 18 and that Booker took no steps to learn her true age. (Case No. 10-CR-133, Doc. 101 at 8.) According to Attorney Wilmouth, Booker's decision to enter a guilty plea was "in candor influenced by the fact that he was also charged in count 3 with production of child pornography," which is a strict

8

liability charge carrying a minimum term of 15 years. (*Id.* at 8-9.) Count 2 only carried a 10-year mandatory minimum. (*Id.*) Attorney Wilmouth explained that Booker was giving up his right to say "I was negligent about her age," which he believed could be a defense. (*Id.* at 9.) Representing that Booker was a "very bright and savvy man," Attorney Wilmouth said he had no concerns that Booker was acting "knowingly and voluntarily and giving up his right to a trial and admitting guilt under the law concerning Count 2." (*Id.* at 10.) At that point, Booker confirmed that he reviewed the matters as outlined by his attorney and considered those matters as commented upon. (*Id.* at 10.) Booker then acknowledged his signature, and represented that he read and understood the plea agreement and did not require further explanations. (*Id.* at 11.)

Under oath, Booker stated that he faced penalties up to life imprisonment, a million dollar fine, a minimum of a ten-year mandatory sentence and a hundred dollar assessment fee and a five-year term of supervised release. (Case No. 10-CR-133, doc. 101 at 12.) According to Booker there were no deals that were not set forth in the agreement. (*Id.* at 13.) Moreover, Booker agreed he was waiving his right to file pretrial motions. (*Id.* at 15.)

Significantly, Booker told this court— in his own words—that he picked up a young lady walking on North Avenue. He did not further investigate whether she was 18. He dropped her off at the hotel with Holly Arnold and then came back the next day to take photos of her without clothing. (Case No. 10-CR-133, Doc. 101 at 20-21.) The following exchange then took place:

> Q. Did you then transmit these photographs in any way?
> A. Yeah, I - - I downloaded them to the computer and posted them on backpage.com.

9

> Q. And was there anything associated with these photographs which would enable someone to communicate with you or with her?
> A. Yes. A phone number.
> Q. All right. And what was the purpose behind sending these photographs across the wires via the Internet and providing this phone number?
> A. Just to make some money.
> Q. To make money doing what?
> A. Prostitution.

(*Id.* at 22.)

As a result of the post, the phone rang and Booker's co-defendant (Holly Arnold) and the victim engaged in prostitution with a third party. (*Id.* at 22-23.) Again, under oath, Booker stated that he was pleading guilty because he was guilty, that he had not told the court anything other than the truth, that he understood that he could not easily withdraw his plea, and that he could not withdraw his plea simply because he disagreed with findings regarding the sentencing guidelines. (*Id.* at 24.) No one "used any threat, force or intimidation with respect to th[e] case or th[e] proposed plead of guilty." (*Id.* at 24.)

    Hence, with respect to each argument raised by Booker, the files and records conclusively establish that he is not entitled to relief. A motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for his contradiction. *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). Booker offers no explanation, let alone a compelling explanation, for the contradiction. Like the defendant in *Peterson*, if Booker's representations to this court were true, his current submission—under penalty of perjury—must be false. *See id.* at 827.

Similarly, the Seventh Circuit rejected a request of an ineffective assistance of counsel argument based on an alleged misrepresentation by counsel where, during the plea colloquy, the court provided correct information regarding the defendant's exposure and the defendant stated that he was fully satisfied with his attorney's representation "belying his subsequent claims that [his attorney] did nothing to prepare from the start of the case." *United States v. Bjorkman*, 270 F.3d 482, 503 (7th Cir. 2011). The Seventh Circuit noted that the defendant neither refused to enter his plea nor voiced any objection when confronted with information concerning the sentence he could receive upon conviction, thereby precluding any argument that he plead guilty in reliance on counsel's misinformation. *Id*. The Court of Appeals also cited the defendant's statement under oath that no one made any promises or assurances to induce him to plead guilty as support for its finding that the trial court did not abuse its discretion by denying defendant's motion to substitute counsel. *Id* .

On this record and with nothing more to support his arguments, Booker cannot assert credibly that counsel should have objected to the application of U.S.S.G. § 2G1.3(b)(3) or that either or both of his attorneys provided incorrect advice "with regard to the charge and potential sentencing range." Further, Booker contradicts himself by contending that he raised these issues with Attorney Wilmouth prior to the plea while also arguing that counsel prevented him from filing a motion to withdraw his plea after he became aware of the erroneous advice. The bottom line is that Booker agreed to the application of the enhancement, testified regarding his conduct which supported the application of the enhancement, and stated that he had no issues that were not raised or addressed by counsel.

11

Lastly, Booker states that Attorney Mullins was removed from the case and that Brian Fahl was appointed to represent him on appeal. Booker states:

> Mr. Fahl never once contacted him regarding the issues to be raised in his appeal. Despite Mr. Booker's many attempts to contact him by phone or through letters, Mr. Fahl never once answered his phone calls or replied to his letters. Thus, Mr. Booker was unable to discuss potential appellate issues with Mr. Fahl.

(Doc. 4 at 7.)

However, the record reveals that Attorney Mullins represented Booker on appeal and throughout the briefing process. Attorney Fahl simply stepped in for oral argument when Attorney Mullins was not available, but Booker never states that Attorney Mullins refused to speak with him or discuss the appeal. Importantly, Booker has not identified any issues that should have been raised beyond the § 2G1.3(b)(3) enhancement and there was no argument under that guideline provision because of the admissions that Booker made in the trial court. Additionally, the issues on appeal had been briefed by Attorney Mullins, and Attorney Fahl could not cite or discuss any case at oral argument unless it had been cited in a brief or drawn to the attention of the appellate court and opposing counsel by a filing under Fed. R. App. P. 28(j). *See* 7th Cir. R. 34.

In his petition and memorandum, Booker contradicts himself with no explanation and misrepresents the events in the underlying case. Booker is reminded that at sentencing, he said he was "here to accept responsibility, you know, for everything that I've done in my life that's been so negative on everybody else." The record confirms that Booker understood that counsel successfully negotiated a plea agreement that avoided the 15-year minimum penalty and avoided the two-level enhancement under § 3B1.1(c), and

12

that his counsel zealously argued mitigation factors. Hence, there is no evidence of deficient performance by counsel or prejudice to Booker.

Having ruled against Booker, the court must issue or deny a certificate of appealability. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 22 53(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mindful of this standard and in the face of Booker's blatant contradictions, the court finds no basis for the issuance of a certificate of appealability.

IT IS ORDERED that Bookers motion to vacate, set aside, or correct sentence is denied.

IT IS FURTHER ORDERED that Booker is denied a certificate of appealability.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 25th day of February, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE